UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERIS ENTERTAINMENT, LLC,

                    Plaintiff,                        Case Number 24-12661

v.                                         Honorable David M. Lawson

MARY ANNE DONLEY, KRISTIN BELTZER,
DENNIS OLSHOVE, HOON-YUNG HOPGOOD,
LEE GONZALES, EDWARD TOMA, and
BLAKE BITNER,

                    Defendants.

_____ /

## OPINION AND ORDER DENYING COMMISSIONER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Generis Entertainment, LLC, a company that owns a bar and restaurant in Saginaw, Michigan, filed a complaint challenging the constitutionality of the administrative search provisions of Michigan's liquor control law. Defendants Michigan Liquor Control Commissioners move for summary judgment on that claim. The principal issue raised by their motion is whether the administrative search scheme prescribed by the relevant statute and administrative rule set out a program with enough certainty and regularity in its application so that it provides a constitutionally adequate substitute for a search warrant. The cases also require the state to show that its warrantless inspection program is "necessary" to the success of its regulatory scheme. The defendants accompanied their motion with an affidavit by Kayla Swope, the director of the Michigan Liquor Control Commission's (MLCC) Enforcement Division. Swope has described in detail how the administrative search provisions of Michigan's liquor law are applied, and the role that unannounced inspections and searches play in the effective administration of the law within the industry. However, neither the language of the statute and administrative rule, nor the explanation of the need for the warrantless search program, satisfy the requirements of the

governing caselaw applying the administrative search exception to the Fourth Amendment's warrant and probable cause requirements.  The defendants' motion to dismiss Count V of the amended complaint will be denied.

I.

The factual allegations underlying the legal issues in this lawsuit already have been summarized in two previous opinions and orders adjudicating earlier motions in the case.  *See* ECF No. 39, 71.  Some brief factual background is offered here for context.

On the morning of October 2, 2023, Joshua Munger, a former employee of the plaintiff, was involved in a car accident after finishing his shift at the plaintiff's restaurant, the Retro Rocks Pub in Saginaw, Michigan.  On October 26, 2023, Defendant Blake Bitner, a state trooper investigating the accident, called Generis's restaurant seeking a copy of Munger's shift schedule and clock-in and clock-out records.  When Bitner paid an unannounced visit to the restaurant the next day, the manager declined to produce the records absent a search warrant.  Bitner then conducted a liquor inspection of the premises and told the manager that failure to provide the requested records could amount to a violation of the liquor control code.  Generis contends that Bitner's liquor inspection was a pretext for obtaining evidence for the criminal investigation related to Munger's car accident.  In any case, Generis's staff did not provide the requested records during that visit, and Trooper Bitner ultimately obtained a warrant to search the business for Munger's shift records from the night of the crash.  He returned to the restaurant during the dinner rush to execute the warrant and obtained the shift records.

In February 2024, Mary Anne Donley of the MLCC filed an administrative complaint against Generis, alleging that Generis permitted Munger to become intoxicated on the restaurant premises in violation of Section 707 of the Michigan Liquor Control Code, Mich. Comp. Laws §§

- 2 -

436.1707(2)-(3), and failed to cooperate with Trooper Bitner's inspection in violation of Section 217 of the Liquor Code, *id.* § 436.1217, and a related administrative rule, Mich. Admin. Code R. 436.1011(4).

Generis filed this lawsuit on October 8, 2024, naming as defendants Bitner and Donley in both their individual and official capacities, as well as all of the MLCC commissioners (Kristin Beltzer, Dennis Olshove, Hoon-Yung Hopgood, Lee Gonzales, and Edward Toma) in their official capacities. The amended complaint asserts five claims: 1) that Bitner's initial warrantless inspection was pretextual and that Donley's ongoing enforcement of the warrantless inspection program violates the Fourth Amendment (Count I), 2) that Bitner retaliated against Generis for exercising its constitutional rights by referring it to the MLCC for prosecution (Count II) and by executing the warrant during the busy dinner rush (Count III), 3) that Bitner and Donley violated its right to due process (Count IV), and 4) that the MLCC's warrantless inspection program set out in Mich. Comp. Laws § 436.1217 and Mich. Admin. Code R. 436.1011 is unconstitutional (Count V).

The defendants moved to dismiss the amended complaint. In an opinion and order dated July 8, 2025, the Court granted in part and denied in part the defendants' motions. ECF No. 39. The Court dismissed all counts against defendant Donley because they were barred by prosecutorial immunity and dismissed Counts II, III, and IV as against defendant Bitner. However, the Court declined to dismiss Count V because it "[could not] say at this stage of the case that Michigan's warrantless inspection regime clearly is constitutional." ECF No. 39, PageID.542. The Court denied qualified immunity to defendant Bitner as to Count I, but the opinion made no comment on whether defendant Bitner was entitled to qualified immunity as to Count V.

Bitner appealed the denial of qualified immunity as to Count I, and the Sixth Circuit affirmed.  *Generis Ent., LLC v. Donley*, No. 25-1656, 2026 WL 473765, at *5 (6th Cir. Feb. 19, 2026) ("According to the complaint, after Plaintiff refused to warrantlessly produce the records relating to the criminal investigation, Trooper Bitner proceeded to complete what he claimed was a warrantless licensed-premises inspection of Retro Rocks. . . . [W]e may infer that Trooper Bitner undertook the remainder of the inspection simply as a means to search for evidence relating to the criminal investigation in an attempt to perform an end-run around Plaintiff's refusal to comply with his initial request for warrantless document production. . . . If those facts are true, Trooper Bitner's actions violated the Fourth Amendment.").  The defendants moved for reconsideration of the Court's denial of their motion to dismiss the facial challenge to the warrantless inspection scheme, but the parties agreed with the Court's suggestion to present the issue in a motion for summary judgment after conducting whatever discovery they deemed appropriate to support their respective positions.

On November 6, 2025, the MLCC defendants filed the present motion for summary judgment as to Count V.  They believe that no factual development is necessary and confine their arguments to the statutory language.  Nevertheless, they support their motion with the affidavit from Director Swope.  The plaintiff opposes the motion but presents no counter-affidavit or any evidence to contradict the representations in Swope's affidavit.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence

- 4 -

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Count V of the amended complaint raises a Fourth Amendment challenge to Michigan's statute and administrative rule that establish an inspection program that allows certain state officials to search the premises of liquor license holders without a warrant and without an opportunity to challenge the search before compliance is required. The relevant statute states:

> (1) The commission may make investigations that it considers proper in the administration of this act and the rules promulgated under this act concerning alcoholic liquor, or the manufacture, distribution, or sale of alcoholic liquor, or the collection of taxes on alcoholic liquor.
>
> (2) **A licensee shall make the licensed premises available for inspection and search by a commission investigator or law enforcement officer empowered to enforce the commission's rules and this act during regular business hours or when the licensed premises are occupied by the licensee or a clerk, servant, agent, or employee of the licensee.** Evidence of a violation of this act or rules promulgated under this act discovered under this subsection may be seized and used in an administrative or court proceeding.
>
> (3) **The commission or a duly authorized agent of the commission may examine or copy the books, records, or papers of a person relative to a requirement pertaining to this act, access to which has been obtained pursuant to this section.**

Mich. Comp. Laws §§ 436.1217(1)-(3). The bolded language is the object of Generis's challenge. It also challenges Rule 436.1011(4) of the Michigan Administrative Code, which states:

> A licensee, or the clerk, servant, agent, or employee of the licensee, shall not threaten, hinder, or obstruct a law enforcement officer or commission inspector or investigator in the course of making an investigation or inspection of the premises and shall not refuse, fail, or neglect to cooperate with a law enforcement officer or a commission inspector or investigator in the performance of his or her duties to enforce the act or commission rules.

The MLCC defendants ask the Court for summary judgment as to Generis's Count V insofar as it pleads a facial challenge to the warrantless inspection program. "[A] facial challenge consists of a challenge that shows either '(1) that there truly are 'no' or at least few 'circumstances' in 'which the Act would be valid,' or (2) that a court cannot sever the unconstitutional textual provisions of the law or enjoin its unconstitutional applications." *Zillow, Inc. v. Miller*, 126 F.4th 445, 455-56 (6th Cir. 2025) (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc)).

The Fourth Amendment prohibits "'unreasonable searches and seizures,'" *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV), and a search conducted without a "warrant issued upon probable cause" is generally understood to be "unreasonable," *ibid.* (citing *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528-29 (1967)). There are exceptions, and the one raised by the defendants in this case to defend the liquor regulation statute and rule is for so-called "special need" administrative inspections. *See Camara*, 387 U.S. at 529; *See v. City of Seattle*, 387 U.S. 541 (1967). That regime is allowed when "special needs . . . make the warrant and probable cause requirement impractical and where the primary purpose of the searches is distinguishable from the general interest in crime control." *City of Los Angeles, California v. Patel*, 576 U.S. 409, 420 (2015) (citation modified).

For administrative searches under the special needs exception, "the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Ibid.* However, the standard is relaxed further for searches of businesses operating in certain closely regulated industries, like liquor sales. *See id.* at 424 (citing *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 77 (1970)). For these businesses, "[n]o warrant or opportunity for precompliance review may be required at all . . . ." *Liberty Coins*, 880 F.3d at 280. But a

warrantless search of these businesses must satisfy three criteria set out by the Supreme Court in *New York v. Burger*, 482 U.S. 691 (1987): (1) "there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made"; (2) "the warrantless inspections must be 'necessary to further [the] regulatory scheme'"; and (3) "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." *Id.* at 702-03 (citation modified).

A.

The Court determined previously in its opinion on the defendants' motions to dismiss that the warrantless inspection program met the first *Burger* requirement, since preventing criminal activity in the liquor industry, protecting public health, and stopping illegal alcohol sales all are substantial government interests.  The State has a substantial interest in regulating the sales of alcohol in order to promote public health and safety.  *Cf. Burger*, 482 U.S. at 708 (defining the state interest in that case as "regulating the vehicle-dismantling and automobile-junkyard industry" due to the rise of motor vehicle theft); *Colonnade Catering*, 397 U.S. at 77 (approving of warrantless inspections of liquor businesses and stating that the industry has "long [been] subject to close supervision and inspection").

B.

The Court did not spend much time on the second factor in its earlier opinion, because the plaintiff's primary argument was that the administrative search program was being misused as a pretext for conducting criminal investigations.  The Court observed that a warrantless inspection program was needed to ensure that liquor code violations are not being concealed.  *See* ECF No. 39, PageID.540.  However, that cursory statement did not explore adequately all the dimensions of this factor that were considered by appellate courts in similar cases.  Perhaps perceiving that

shortcoming, the defendants argue here that surprise inspections, which are made possible by the statute's lack of temporal limitations, encourage consistent compliance with the statute and prevent businesses from destroying evidence in advance of inspections. *See* ECF No. 62, PageID.838-39.

In *Patel*, the Supreme Court considered a Fourth Amendment facial challenge to a Los Angeles city ordinance that required hotels to make guest records available to the police department and stated that "[w]henever possible" the inspections should "be conducted at a time and in a manner that minimizes any interference with the operation of the business." *Patel*, 576 U.S. at 413. Although the Court found that hotels are not closely regulated businesses — like liquor sellers are — it evaluated the ordinance as if they were, as an alternative holding. *Id.* at 426-28. And when assessing *Burger*'s second requirement, the Court concluded that warrantless inspections were not necessary to advance the regulatory scheme, and that precompliance review would not undermine its effectiveness. *Id.* at 427. The Court reasoned that if an inspector were refused access to the business or feared destruction or falsification of records if a regulated party were given notice of the search, he could obtain an *ex parte* warrant. *Ibid.* (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320 (1978) ("[It is not] apparent why the advantages of surprise would be lost if, after being refused entry, procedures were available for the [Labor] Secretary to seek an *ex parte* warrant to reappear at the premises without further notice to the establishment being inspected.")). And the Court observed that "nothing . . . precludes an officer from conducting a surprise inspection by obtaining an *ex parte* warrant or, where an officer reasonably suspects the [hotel] registry would be altered, from guarding the registry pending a hearing on a motion to quash." *Ibid.*

I pause for a moment to acknowledge — and reject — the defendants' argument that the *Patel* Court's pronouncements about closely-regulated businesses should be disregarded as *obiter*

*dictum*. Appellate courts uniformly have recognized that they are obligated to follow Supreme Court *dicta,* particularly when there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale. *See*, *e.g.*, *In re Baker*, 791 F.3d 677, 682 (6th Cir. 2015); *Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky.*, 607 F.3d 439, 447-48 (6th Cir. 2010); *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("[T]his court considers itself bound by Supreme Court *dicta* almost as firmly as by the Court's outright holdings, particularly when the *dicta* is recent and not enfeebled by later statements."); *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991) ("[F]ederal appellate courts are bound by the Supreme Court's considered *dicta* almost as firmly as by the Court's outright holdings . . . ."). District courts likewise are bound by those pronouncements, even when they are not strictly necessary to the Supreme Court's decision. Here, there is no reason to disregard *Patel*'s statements regarding closely-regulated businesses. It is a recent case, and its reasoning has not been challenged by later decisions. That is especially true here when the statements have been adopted even more recently by the Sixth Circuit in *Liberty Coins*.

*Liberty Coins* provides further guidance on this factor because it evaluated the constitutionality of four separate statutes and administrative rules that regulated precious metal dealers — a closely-regulated industry. Two provisions required businesses licensed to deal in precious metals to keep records of all articles received on a day-by-day basis, make those records available to the police each business day, and provide authorities with the articles described in the records "upon demand." 880 F.3d at 286-87. The court held that *Burger*'s second "necessity" requirement was satisfied because "the flexibility to conduct 'unannounced' inspections" of the transaction records and the items was "essential" to the goal of "deterring both sellers and purchasers alike from engaging in suspect transactions involving precious metals." *Id.* at 297-88.

However, the court held that two other sections of the statute, which it read to authorize the warrantless inspection of "the entire businesses of both licensees and non-licensees," did not satisfy the "necessity" requirement because the state could not explain why "*warrantless* searches would be required" to ensure compliance with the precious metals regulatory statutes. *Id.* at 289-90. The court reasoned that "most precious metals dealers will likely acquiesce to routine investigations," *id.* at 290, and *Patel* itself "recognize[d] that 'the great majority of businessmen can be expected in normal course to consent to inspection without a warrant,'" *ibid.* (quoting *Patel*, 576 U.S. at 422 (in turn quoting *Barlow's, Inc.*, 436 U.S. at 316)). And if a dealer refused, Ohio's statute empowered inspectors to compel production of the items by subpoena. *Ibid.*

In this case, MLCC enforcement director Kayla Swope asserted in her affidavit that warrantless inspections are "the heart and soul of liquor compliance and enforcement" and that "effective liquor enforcement depends on it." Aff. of Swope, ¶¶ 15, 16, ECF No. 62-2, PageID.852. She stated that "[t]housands of inspections . . . regularly take place each year," and that "many of them reveal violations of the Code or rules." *Id.* ¶ 18, PageID.852. However, Swope (nor any of the defendants) does not explain *why* warrantless inspections are necessary. The statute mandates that a liquor seller's entire "licensed premises [be] available for inspection and search," Mich. Comp. Laws § 436.1217(2), not simply records or inventory. In that way, the defendants have not distinguished this regulatory scheme from the ones found wanting in *Patel* and *Liberty Coins.* There is no suggestion that liquor licensees routinely refuse the unannounced inspections, or, if they do, why the broad subpoena power conferred upon investigators would not serve the inspection scheme's purpose. *See* Mich. Comp. Laws § 436.1217(4) ("A member of the commission or a duly authorized agent of the commission may issue a subpoena requiring a person to appear before the commission or its duly authorized agent at any reasonable time and place, to

be examined with reference to any matter within the scope of the inquiry or investigation being conducted by the commission, and to produce any books, records, or papers pertaining to the question involved."). Commenting on a similar provision in the Precious Metals Dealers Act, the *Liberty Coins* court concluded that "[t]hose [process-based] remedies undercut the notion that the Ohio General Assembly thought warrantless searches would be 'crucial' to effectuate compliance with the Act." *Liberty Coins*, 880 F.3d at 290. The same must be said here.

C.

In the decision denying the defendants' motions to dismiss the facial challenge to the warrantless inspection program (Count V of the amended complaint), the Court concluded that the program did not measure up to *Burger*'s third requirement, that is, "in terms of the certainty and regularity of its application, [the program] provides a constitutionally adequate substitute for a warrant." *Burger*, 482 U.S. at 703; *see* ECF No. 39, PageID.542. One of the reasons was that although the Michigan statute limited warrantless inspections to "regular business hours" or when the licensed premises was occupied, and only liquor investigators and certain law enforcement officers were empowered to conduct inspections for Liquor Code violations, there was no guidance on when or how often inspections could be conducted. *Id.* at PageID.543. The Court stated that "the statute in *Burger* informed the business owners that inspections would be conducted on a 'regular basis,'" and that "Michigan's contains no such temporal guidance." *Ibid.*

The defendants argue — correctly — that the Court's prior opinion misdescribed *Burger* to the extent that it said that the statute in *Burger* expressly warned that inspections would occur on a "regular basis." The defendants observe that the text of the statute in *Burger* contained no express temporal limitation. The statute challenged in *Burger* actually stated:

> Records and identification. (a) Any records required by this section shall apply only to vehicles or parts of vehicles for which a certificate of title has been issued

- 11 -

by the commissioner [of the Department of Motor Vehicles] or which would be eligible to have such a certificate of title issued. Every person required to be registered pursuant to this section shall maintain a record of all motor vehicles, trailers, and major component parts thereof, coming into his possession together with a record of the disposition of any such motor vehicle, trailer or part thereof and shall maintain proof of ownership for any motor vehicle, trailer or major component part thereof while in his possession. Such records shall be maintained in a manner and form prescribed by the commissioner. The commissioner may, by regulation, exempt vehicles or major component parts of vehicles from all or a portion of the record keeping requirements based upon the age of the vehicle if he deems that such record keeping requirements would serve no substantial value. *Upon request of an agent of the commissioner or of any police officer and during his regular and usual business hours, a vehicle dismantler shall produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles which are subject to the record keeping requirements of this section and which are on the premises. . . .* The failure to produce such records or to permit such inspection on the part of any person required to be registered pursuant to this section as required by this paragraph shall be a class A misdemeanor.

*Burger*, 482 U.S. at 694 n.1 (emphasis added).

The defendants are correct that the statute in *Burger* did not provide an express temporal limitation. *See ibid.*; *see also United States v. Steed*, 548 F.3d 961, 971 (11th Cir. 2008) ("[T]he New York statute [at issue in *Burger*] provided sufficient notice that inspections would occur on a regular basis, even though the statute did not so expressly provide"). Why the Supreme Court believed that the statute provided notice that inspections would occur on a "regular basis," *Burger*, 482 U.S. at 711, is not clear, and the dissent in *Burger* criticized the majority for making this inference, *id.* at 722 (Brennan, J., dissenting) ("The statute does not inform the operator of a vehicle-dismantling business that inspections will be made on a regular basis; in fact, there is *no* assurance that any inspections at all will occur."). The Supreme Court's subsequent decision in *Patel*, however, seemingly took as true the *Burger* Court's factual conclusion that the New York statute put regulated persons on notice that inspections would occur on a "regular basis," but it declined to make the same presumption for the Los Angeles hotel ordinance, which failed to

describe how frequently inspections would occur. 576 U.S. at 427-28 ("While the Court has upheld inspection schemes of closely regulated industries that called for searches at least four times a year . . . or on a 'regular basis,' [*Burger*, 482 U.S. at 711], § 41.49 imposes no comparable standard."). After *Patel*, then, it appears that courts may not assume that a statute informs regulated persons that inspections will occur on a "regular basis" if the statute does not say so — even though the *Burger* Court arguably indulged the same assumption. It follows that this Court did not misstep by distinguishing *Burger* on the same basis that *Patel* did when it concluded that the Michigan statute may be constitutionally problematic because "as in *Patel*, the Michigan statute imposes *no standard* that would alert a business about how often or under what conditions their premises may be subject to inspection." ECF No. 39, PageID.543.

Recall also that the Sixth Circuit found part of the Precious Metals Dealers Act and an accompanying regulation unconstitutional because the provisions "effectively allow searches of dealers' entire businesses" and "'do[] not provide any standards to guide inspectors . . . in the exercise of their authority to search.'" *Liberty Coins*, 880 F.3d at 291 (quoting *Donovan v. Dewey*, 453 U.S. 594, 601 (1981)). The defendants do not meaningfully distinguish that reasoning. They point out that *Liberty Coins* upheld against a Fourth Amendment challenge two other parts of the Ohio law that bear some similarity to the statute challenged in this case. But the defendants do not distinguish the portion of *Liberty Coins* that held two separate provisions facially unconstitutional because of their broad scope and the absence of discretion-constraining standards. *Ibid.* The Michigan statute has similar flaws. The defendants highlight certain limits in the Michigan statute — that inspections may occur only at the "licensed premises" and during "regular business hours" (or when the business is otherwise occupied), Mich. Comp. Laws § 436.1217(2) — but these limits do not meaningfully constrain inspecting officers' discretion in choosing when to conduct

- 13 -

searches, how often to conduct them, or what materials to search. The facts of this case highlight the free-wheeling authorization afforded law enforcement officers under the warrantless inspection program, where a state trooper allegedly misused the program to further his criminal investigation. Nor do the defendants address effectively this Court's expressed concern that the statute and related regulations might authorize searches of "all manner of materials that might relate, at least tangentially, to a liquor code violation," including "items that extend beyond the purview of what one typically might consider liquor law enforcement." ECF No. 39, PageID.543. The defendants' argument that the scope of searches must be broad because the scope of liquor law in Michigan itself is quite broad, *see* ECF No. 62, PageID.840-41, does not respond to this concern; rather, it merely confirms the Court's understanding that the statute's unconstrained reach is quite broad.

At oral argument on this motion, the defendants contended that *Thompson v. Wilson*, 159 F.4th 91 (1st Cir. 2025), supported their position that Michigan's warrantless liquor inspection program furnishes an adequate substitute for a warrant. *Thompson* dealt with an administrative rule promulgated by the Maine Department of Marine Resources that "require[d] all Maine lobstermen who hold federal lobster fishing permits to install an electronic tracking device on their vessels and share their location data whenever those vessels [were] in the water." 159 F.4th at 93. The First Circuit held that the regulation satisfied *Burger*'s third requirement because (1) it was undisputed that the rule gave lobstermen "notice of the tracking requirement and the surrounding regulatory scheme" and (2) there was no danger of unfettered discretion in conducting searches because the regulation sufficiently was limited in time, place, and scope. *Id.* at 105. The court reasoned that the statute sufficiently constrained enforcement officers because it permitted them *no* discretion in conducting inspections; the tracking requirement universally applied to all boats whenever they were in the water. *Id.* at 105-06. The court also acknowledged that the regulation

did not include a temporal limitation but found that this was reasonable because lobstermen could be in the water at essentially any time, and a narrower time limitation would frustrate the regulatory scheme. *Id.* at 106. The regulation also was reasonably limited in scope because the trackers "relay[ed] time and position data only, and the Rule does not authorize the search of any vessels more broadly." *Ibid.* (citation omitted).

The MLCC defendants believe *Thompson* helps their position because the case "did not treat *Patel* as having altered the analysis of *Burger*'s third prong" and embraced *Burger*'s "flexible" analysis. Supplemental Br., ECF No. 73, PageID.976. They relatedly point out *Thompson*'s reliance on *Burger* for the propositions that temporal limitations on inspections are only a non-dispositive factor to be considered and that frequent inspections may be necessary to satisfy the purposes of a regulatory scheme.

*Thompson* has limited application here. It does not address the Michigan statute's absence of any standard that would alert a business about how often or under what conditions their premises may be subject to inspection, much like the ordinance in *Patel*. Rather, it was clear in *Thompson* that the (relatively limited) tracker data would be transmitted to the government whenever lobstermen were in the water. 159 F.4th at 105-06. Moreover, the *Thompson* regulation did not implicate the same concerns about officer discretion. The Michigan statute, as discussed, effectively permits searches of licensees' entire businesses without meaningful limits on an officer's choice of where and what to search. The tracker requirement in *Thompson*, meanwhile, involved *no* officer discretion because it applied to all regulated persons constantly and did not authorize any physical intrusion into the vessels. *Ibid.*

The defendants also cited *Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970), in support of their arguments. That case is cited most frequently for the well-recognized

proposition that liquor distribution is the kind of closely regulated industry subject to the relaxed Fourth Amendment standards under the administrative search exception. *E.g.*, *Patel*, 576 U.S. at 424 (citing *Colonnade Catering*, 397 U.S. 72). But that case did not call into question — or even discuss — the constitutionality of three federal statutes authorizing warrantless inspections of liquor dealers. Instead, it held that the government improperly exceeded its authority when agents broke a lock and forcibly entered a storeroom containing liquor. *Colonnade Catering*, 397 U.S. at 72-73, 77. Moreover, *Colonnade Catering* predated *Burger* and therefore did not apply the three *Burger* requirements, so the opinion does not provide any explanation of how or whether the statutes were tailored in accordance with that test. And the *Patel* opinion implies that statutes must give some express notice of the frequency or regularity of inspections and limit officer discretion as to "which [businesses] to search and under what circumstances," 576 U.S. at 427, even though the text of the statute in *Burger* (and *Colonnade Catering*) arguably did not do that, *see Colonnade Catering*, 397 U.S. at 73, nn.1-2. That, perhaps, is one reason why the *Patel* majority was unmoved by Justice Scalia's dissent, in which he argued that the *Patel* ordinance satisfied the third *Burger* requirement because it was narrower in scope than the statutes discussed in *Colonnade Catering* and several other administrative search cases predating *Patel*. 576 U.S. at 439-40 (Scalia, J., dissenting) (citing *Colonnade Catering*, 397 U.S. at 73 n.2; *United States v. Biswell*, 406 U.S. 311, 311 & n.1 (1972); *Donovan*, 452 U.S. at 596; *Burger*, 482 U.S. at 694 n.1).

A warrantless inspection program for closely-regulated industries can qualify as a constitutionally adequate substitute for a warrant under the Fourth Amendment only if it is "sufficiently comprehensive so that businesses are on notice that they will be subject to periodic searches of a properly defined scope," and "it . . . constrain[s] the discretion of an inspecting officer by being carefully limited in time, place, and scope." *Liberty Coins*, 880 F.3d at 286 (quoting

- 16 -

*Burger*, 482 U.S. at 702).  When measured against these criteria as they are interpreted by the Supreme Court and the Sixth Circuit, the conclusion that Michigan's warrantless liquor law inspection statute and rule come up short is unavoidable.

III.

The MLCC defendants seek summary judgment as a matter of law on Count V of the amended complaint, which alleges that Michigan Compiled Laws § 436.1217(2)-(3) and Rule 436.1101(4) of the Michigan Administrative Code on their face violate the Fourth Amendment. The defendants cannot succeed on their motion because those provisions are unconstitutional.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment (ECF No. 62) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   April 23, 2026